UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------ X
DANIEL DE MELO FERREIRA, FELIX    :
FLORENTINO, MARVIN YOVANY    :
OSWALDO, ALEXIS ARANDA PAZ and    :
JERONIMO ORELLANA OLIVARES,    :    **REPORT AND RECOMMENDATION**
individually and on behalf of all others similarly    :
situated,    :    22 Civ. 03796 (MKB) (VMS)
    :
        Plaintiffs,    :
    :
    -against-    :
    :
BROOKLYN'S CONSTRUCTIONS &    :
DESINGS INC., BROOKLYN'S    :
CONSTRUCTIONS & RENOVATIONS CORP., :
4 GIRON CONSTRUCTION INC., and    :
FRANSICO GIRON, as an individual,    :
    :
        Defendants.    :
------------------------------------------------------------ X

**Vera M. Scanlon, United States Magistrate Judge:**

Plaintiffs Daniel de Melo Ferreira ("Mr. Ferreira"), Felix Florentino ("Mr. Florentino"),

Marvin Yovany Oswaldo ("Mr. Oswaldo"), Alexis Aranda Paz ("Mr. Paz") and Jeronimo

Orellana Olivares ("Mr. Olivares") (together, "Plaintiffs"), individually and on behalf of all

others similarly situated bring this action against Brooklyn's Constructions & Desings Inc.,

Brooklyn's Constructions & Renovations Corp., 4 Giron Construction Inc. ("Corporate

Defendants") and Fransico Giron, as an individual ("Individual Defendant") (together

"Defendants").  Plaintiffs allege that Defendants violated the Fair Labor Standard Act ("FLSA"),

29 U.S.C. § 201 et seq., and the New York Labor Law ("NYLL"), Compl., ECF No. 1 ¶ 3, by

failing to compensate Plaintiffs for the entirety of their regular work hours and to pay for

overtime wages under the FLSA and the NYLL, and by failing to provide Plaintiffs with written

notice-and-wage statements in violation of the NYLL.  Id. ¶¶ 79-102.

Upon Defendants' failure to appear and answer or otherwise respond to the complaint ("Complaint"), Plaintiffs move for a default judgment against all Defendants ("Motion for Default Judgment"). See ECF No. 26. Plaintiffs seek compensatory damages and liquidated damages in an amount exceeding $100,000.00. See ECF No. 1 ¶ 3. Plaintiffs also seek interest as this Court deems appropriate. See id. Plaintiffs do not seek attorneys' fees. See ECF No. 33. Plaintiff's Motion for Default Judgment is before this Court on referral from the Honorable Margo K. Brodie. For the reasons stated below, this Court respectfully recommends that Plaintiffs' Motion for Default Judgment be granted except as to the NYLL § 195 claims, which should be deemed withdrawn per Plaintiffs' counsel's letter at ECF No. 33..

## I.  Background

The following facts are derived from the Complaint, the Motion for Default and its supporting documents, including Plaintiffs' Memorandum of Law in Support of the Motion for Default Judgment (the "Memorandum of Law") and the affirmation of Plaintiffs' counsel Avraham Y. Scher ("Scher Affirmation"). See ECF Nos. 27-28. The allegations in the Complaint are accepted as true for purposes of this Motion for Default Judgment. Facts relating to the procedural history of the case are derived from the docket.

### A.  Factual Background

This case arises from Plaintiffs' claims for unpaid wages. All Plaintiffs claim that throughout their employment with Defendants, they were not paid an overtime premium for hours worked more than forty (40) hours per week, and for certain dates, for all hours worked, including overtime. See ECF No. 1 ¶ 33 (Mr. Ferreira), ¶ 40 (Mr. Florentino), ¶ 47 (Mr. Oswaldo), ¶ 54 (Mr. Paz), ¶ 61 (Mr. Olivares).

Mr. Ferreira was employed as a taper and painter by Corporate Defendants from in or around November 2020 until in or around March 2021, while performing related miscellaneous duties for Defendants.  See ECF No. 1 ¶ 28.  Throughout his employment, Mr. Ferreira was regularly scheduled to work six (6) to seven (7) days per week from 8:00 a.m. to 4:30 p.m, or later for a total of fifty-one (51) to fifty-nine and a half (59.5) hours per week.  See id. ¶¶ 29-32.  From in or around November 2020 until in or around March 2021, Mr. Ferreira received a flat daily wage of approximately two hundred dollars ($200.00).  See id. ¶ 32.  Mr. Ferreira was not compensated by Defendants for his last approximately five (5) weeks of employment.  See id. ¶ 34.

Mr. Florentino was employed as a concrete worker and carpenter by Corporate Defendants from in or around November 2020 until in or around March 2021, while performing related miscellaneous duties for Defendants.  See id. ¶ 35.  Throughout his employment, Mr. Florentino "worked approximately five (5) days per week, during his employment with Defendants and worked six (6) days per week approximately three to four times during his employment."  Id. ¶ 36.  Mr. Florentino was regularly scheduled to work from 8:00 a.m. to 4:30 p.m or later for a total of forty-two and a half (42.5) hours, or more hours, from in or around November 2020 until in or around March 2021, except when he worked six days per week and would work approximately fifty-one (51) hours per week.  See id. ¶¶ 37-38.  From in or around November 2020 until in or around March 2021, Mr. Florentino received a flat hourly rate of approximately twenty-five dollars ($25.00) an hour.  See id. ¶ 39.  Plaintiff was not compensated by Defendants for his last approximately eight (8) weeks of employment.  See id. ¶ 41.

Mr. Oswaldo was employed as a concrete worker, construction assistant and demolition worker and performed related miscellaneous duties for Defendants, from in or around December

3

2020 until in or around February 2021. <u>See</u> <u>id.</u> ¶ 42. Throughout his employment, Mr. Oswaldo worked approximately six (6) to seven (7) days per week from 8:00 a.m. to 4:30 p.m or later for a total of for a total of fifty-one (51) to fifty-nine and a half (59.5) hours per week, or more hours, from in or around December 2020 until in or around February 2021. <u>See</u> <u>id.</u> ¶¶ 43-45. From in or around December 2020 until in or around February 2021, Mr. Oswaldo received a flat daily wage of approximately $130.00 per day. <u>See</u> <u>id.</u> ¶ 46. Plaintiff was not compensated by Defendants for his last week of employment. <u>See</u> <u>id.</u> ¶ 48.

Mr. Paz was employed as a taper and painter and performed related miscellaneous duties for Defendants, from in or around December 2020 until in or around February 2021. <u>See</u> <u>id.</u> ¶ 49. Throughout his employment, Mr. Paz worked approximately six (6) to seven (7) days per week from 8:00 a.m. to 4:30 p.m or later for a total of for a total of fifty-one (51) to fifty-nine and a half (59.5) hours per week, or more hours, from in or around December 2020 until in or around February 2021. <u>See</u> <u>id.</u> ¶¶ 50-52. He received a flat daily wage of approximately $170.00 per day. <u>See</u> <u>id.</u> ¶ 53. Throughout his employment with Defendants, Mr. Paz was not paid overtime premium for hours worked more than forty (40) hours per week or for all hours worked, including overtime. <u>Id.</u> ¶ 54. Plaintiff was not compensated by Defendants for his last three (3) weeks of employment. <u>See</u> <u>id.</u> ¶ 55.

Mr. Olivares was employed as a concrete worker and demolition worker and performed related miscellaneous duties for Defendants, from in or around November 2020 until in or around February 2021. <u>See</u> <u>id.</u> ¶ 56. Throughout his employment, Mr. Olivares worked approximately six (6) days per week from 8:00 a.m. to 4:30 p.m or later for a total of for a total of fifty-one (51) hours per week, or more hours, from in or around December 2020 until in or

around February 2021.  See id. ¶¶ 57-59.  Plaintiff was not compensated by Defendants for his last three (3) weeks of employment.  See id. ¶ 62.

### B.    Procedural Background

Plaintiffs filed the Complaint on behalf of themselves and all others similarly situated on June 28, 2022.[1]  See ECF No. 1.  Corporate Defendants were properly served through the New York Secretary of State on July 11, 2022.  See ECF Nos. 11 & 12.  On June 30, 2022, July 1, 2022 and August 6, 2022, a processor server attempted to serve the civil cover sheet, summons and Complaint upon Individual Defendant through substituted service at Individual Defendant's place of business, 4 Giron Construction Inc.'s business address at 1747 West 6th Street, Apt. 2L, Brooklyn, NY 11223.  See ECF No. 13.  As the deponent was "unable to confirm the Defendant's place of employment or work habits," substituted service "could not be made with due diligence" upon Individual Defendant.  Id.  The process server served Individual Defendant via nail-and-mail service by affixing a copy of the documents at Individual Defendant's place of business on August 16, 2022, and by timely mailing another copy of the documents to Individual Defendant's place of employment.  See id.

Following Corporate Defendants' and Individual Defendant's respective failures to answer or otherwise respond to the Complaint, Plaintiff filed a request for a certificate of default, which the Clerk of Court issued.  See ECF Nos. 14 & 15.  This Court then held a telephone conference at which Defendants failed to appear.  See 11/15/2022 Minute Entry.  Plaintiffs moved for an extension of time to file a motion for default judgment against Defendants.  See ECF No. 20.  The Court granted the motion and mailed a copy of its Order and the docket sheet

---

[1] During a conference with the Court on March 11, 2024, counsel confirmed that Plaintiffs only seek relief on their own behalf in this Motion for Default Judgment.

to Defendants.  See 1/06/2023 Order.  The Court's mailings to Defendants Giron and 4 Giron

Construction Inc. were returned as undelivered.  See ECF Nos. 22 & 23.  The Court issued an

Order directing Plaintiffs' counsel to file a status report addressing any proposed motion practice

and "whether Defendants are or will be participating in this action to Plaintiffs' counsel's

knowledge."  6/19/2023 Order.  The Court mailed copies of the status report order and the docket

sheet to Defendants.  The Court's mailings to Brooklyn's Constructions and Desings Inc. were

returned to the Court.  See ECF No. 24.  Plaintiffs moved for a second extension of time to file a

motion for default judgment.  See ECF No. 25.  In their letter in support of their second motion

for an extension, Plaintiffs stated that "based on our conversations with the Defendants, it has

become clear that the Defendants do not intend to appear or respond in this action, retain counsel

to do so on their behalf, or otherwise defend in this action."  Id. at 1.  Plaintiffs informed the

Court that they were "in the process of drafting their anticipated motion for default judgment in a

sum certain against the Defendants, but will require some additional time to do so.  Id. (emphasis

in original).  We reasonably anticipate being able to file Plaintiffs' Motion within two (2) weeks

of the Court's granting of this request, or on or before July 11, 2023."  Id.  On July 5, 2023, the

Court granted Plaintiffs' second motion for an extension of time and ordered Plaintiffs to serve

the motion for default judgments on Defendants and file proof of service on the docket.  The

Court mailed copies of its July 5, 2023 Order and the docket sheet to Defendants.  The Court's

mailings to Giron and 4 Giron Construction Inc. were returned to sender for "insufficient

address."  See ECF Nos. 30-31.

  Plaintiffs filed their Motion for Default Judgment, the Memorandum of Law and Scher

Affirmation, as well as an affidavit of service of the motion and its supporting documents.  See

ECF Nos. 26-28, 29.  The District Court referred the Motion for Default to this Court for a report and recommendation.

## II.    Legal Standards For A Default Judgment

Federal Rule of Civil Procedure ("Fed. R. Civ. P.") 55 establishes a two-step procedure by which a party may obtain a default judgment.  See City of N.Y. v. Mickalis Pawn Shop, LLC, 645 F.3d 114, 128 (2d Cir. 2011); New York v. Green, 420 F.3d 99, 104 (2d Cir. 2005).  First, pursuant to Fed. R. Civ. P. 55(a), if a party has failed to plead or otherwise defend, the Clerk of the Court must enter a certificate of default by making a notation on the record.  See Fed. R. Civ. P. 55(a).  Second, after this entry of default, if the party still fails to appear or move to set aside the default, then the court may enter a default judgment.  See Fed. R. Civ. P. 55(b).

"'The dispositions of motions for entries of defaults and default judgments . . . are left to the sound discretion of a district court because it is in the best position to assess the individual circumstances of a given case and to evaluate the credibility and good faith of the parties.'"  Shah v. New York State Dep't of Civil Serv., 168 F.3d 610, 615 (2d Cir. 1999) (citing Enron Oil Corp. v. Diakuhara, 10 F.3d 90, 95 (2d Cir. 1993)).  This discretion is not absolute; a district court's "discretion to grant default judgment is 'circumscribed' as 'a reflection of [Second Circuit's] oft-stated preference for resolving disputes on the merits.'"  U.S. v. Starling, 76 F.4th 92, 99 (2d Cir. 2023) (citing Enron Oil Corp. v. Diakuhara, 10 F.3d 90, 95 (2d Cir. 1993)).  The district court must carefully balance the need to adjudicate cases expeditiously, on the one hand, with its responsibility to give litigants a chance to be heard, on the other.  See Enron Oil, 10 F.3d at 96.  With these dual goals of conserving judicial resources and affording due process, doubts should generally be construed in favor of the defaulting party.  See id.

On a default judgment motion, the defendants are deemed to have admitted all the well-pled factual allegations in the plaintiffs' complaint.  See Cement & Concrete Workers Dist. Council Welfare Fund v. Metrofoundation Contractors, Inc., 699 F.3d 230, 234 (2d Cir. 2012); Greyhound Exhibitgroup, Inc. v. E.L.U.L. Realty Corp., 973 F.2d 155, 158 (2d Cir. 1992).  Once the defendant is found to be in default, the plaintiffs bear the burden of showing that they are entitled to recovery.  See Danser v. Bagir Int'l, 571 F. App'x 54, 55 (2d Cir. 2014) (finding that the district court properly declined to enter a default judgment against the defendants in light of the plaintiff's failure to state a claim); Taizhou Zhongneng Imp. & Exp. Co., Ltd v. Koutsobinas, 509 F. App'x 54, 58 (2d Cir. 2013) (finding that the district court erred in denying the defendant's motion to vacate a default judgment because the plaintiff failed to "make out a cause of action against" the defendant).

"'While a party's default is deemed to constitute a concession of all well pleaded allegations of liability, it is not considered an admission of damages.'"  Cement & Concrete Workers Dist. Council Welfare Fund v. Metrofoundation Contractors, Inc., 699 F.3d 230, 234 (2d Cir. 2012) (citing Greyhound Exhibitgroup, Inc. v. E.L.U.L. Realty Corp., 973 F.2d 155, 158 (2d Cir. 1992)).  "The district court must instead conduct an inquiry in order to ascertain the amount of damages with reasonable certainty."  Credit Lyonnaise Sec. (USA), Inc. v. Alcantra, 183 F.3d 151, 155 (2d Cir. 1999) (citing Transatlantic Marine Claims Agency, Inc. v. Ace Shipping Corp., Div. of Ace Young Inc., 109 F.3d 105, 111 (2d Cir. 1997)).  In order to determine whether there is sufficient evidence for the damages sought by plaintiff, the district court may either rely on "evidence presented at a hearing or upon a review of affidavits and documentary evidence."  Cement & Concrete Workers Dist. Council Welfare Fund, 699 F.3d at 234 (citing Fed. R. Civ. P. 55(b)(2)).

8

### III.    Discussion

#### A.    Proper Service Of Process

A court may not enter default judgment "unless it has jurisdiction over the person of the party against whom the judgment is sought, which also means that he must have been effectively served with process." U.S. Flour Corp. v. Certified Bakery, Inc., No. 10 Civ. 2522 (JS) (WDW), 2012 WL 728227, at *4 (E.D.N.Y. Mar. 6, 2012) (internal quotation marks & citation omitted); cf. DeMartino v. Rivera, 148 A.D.2d 568, 569 (2d Dep't 2009) ("It is well settled that where service of process has been improperly effected, any resulting default judgment is a nullity."). "A default judgment is ordinarily justified where a defendant fails to respond to the complaint." J & J Sports Prod., Inc. v. Ahuachapan Corp., 422 F. Supp. 3d 652, 662 (E.D.N.Y. 2019) (citing SEC v. Anticevic, 05 Civ. 6991 (KMW), 2009 WL 4250508, at *2 (S.D.N.Y. Nov. 30, 2009)).

Plaintiffs served Defendants under New York law, as permitted by the Federal Rules of Civil Procedure. See Fed R. Civ. P. 4(e)(1). As to Corporate Defendants, New York Business Corporation Law § 306(b)(1) provides, in relevant part that:

> [s]ervice of process on the secretary of state as agent of a domestic . . . corporation shall be made by personally delivering to and leaving with the secretary of state or a deputy, or with any person authorized by the secretary of state to receive such service, at the office of the department of state in the city of Albany, duplicate copies of such process together with the statutory fee, which fee shall be a taxable disbursement. Service of process on such corporation shall be complete when the secretary of state is so served. The secretary of state shall promptly send one of such copies by certified mail, return receipt requested, to such corporation, at the post office address, on file in the department of state, specified for the purpose.

N.Y. Bus. Corp. L.§ 306(b)(1).

As to Individual Defendant, under C.P.L.R. § 308, personal service may be made through substituted service by "delivering the papers within the state to a person of suitable age and discretion at the actual place of business . . . of the person to be served. Second, by mailing the

papers by first class mail to the person to be served at his or her last known residence or mailing them to his or her actual place of business.  Such delivery and mailing to be within 20 days of each other."  C.P.L.R. § 308(2).  "'Actual place of business' shall include any location that the Defendant, through regular solicitation or advertisement, has held out as its place of business." C.P.L.R. § 308(6).  Under C.P.L.R. § 308(4),

> [i]f repeated, genuine attempts at personal and substituted service have failed, the papers may be served by (1) affixing the papers to the door of either the actual place of business . . . and (2) either mailing the papers to the person to be served at his or her last known residence or by mailing them by first class mail to the person's actual place of business. Such affixing and mailing to be within 20 days of each other. The affidavit of service should describe in detail the prior attempts at personal service.

Plaintiffs properly served Corporate Defendants with the Summons and Complaint by personally delivering duplicate copies of such process with the statutory fee on the Secretary of State.  See ECF Nos. 10 & 12; N.Y. Bus. Corp. L.§ 306(b)(1).  Plaintiffs attempted to serve Individual Defendant through a processor server at Individual Defendant's regular place of business.  See ECF No. 13; C.P.L.R. § 308(2).  After repeated and good-faith attempts at serving Individual Defendant through substitute service, see ECF No. 13, the process server served Individual Defendant through nail-and-mail service by affixing the papers to the door of Individual Defendant's place of business on August 16, 2022, and by mailing the papers by first-class mail to the same address on August 18, 2022.  See id.

Plaintiffs also served Defendants via certified mail with copies of Plaintiff's Motion for Default Judgment, Memorandum of Law and Scher Affirmation.  See ECF No. 29.  Although Defendants have not appeared in this case, Plaintiff properly served Defendants and had "conversations with the Defendants" following which it became clear to Plaintiffs' counsel that Defendants did not "intend to appear or respond in this action, retain counsel to do so on their

behalf, or otherwise defend in this action."  ECF No. 25.  Defendants, thus, are aware of this action but have failed to participate.

### B.    Entry Of A Default Judgment Is Warranted

"When a district court decides a motion to vacate a default judgment pursuant to the provisions of Rule 60(b), the court's determination must be guided by three principal factors: '(1) whether the default was willful, (2) whether the defendant demonstrates the existence of a meritorious defense, and (3) whether, and to what extent, vacating the default will cause the nondefaulting party prejudice.'"  State Street Bank & Trust Co. v. Inversiones Errazuriz Limitada, 374 F.3d 158, 166-67 (citing S.E.C. v. McNulty, 137 F.3d 732, 738 (2d Cir. 1998); see Pecarsky v. Galaxiworld.com, Ltd., 249 F.3d 167, 171 (2d Cir. 2001) ("When deciding whether to relieve a party from default or default judgment, we consider the willfulness of the default, the existence of a meritorious defense, and the level of prejudice that the non-defaulting party may suffer should relief be granted.").

Considering the first factor, a defendant's failure to respond to the complaint is sufficient to demonstrate willfulness.  See Bricklayers and Allied Craftworkers Local 2, Albany, N.Y. Pension Fund v. Moulton Masonry & Constr., LLC, 779 F.3d 182, 186 (2d Cir. 2015) (finding that "the district court did not abuse its discretion in denying the defendants' motion to vacate the entry of default" where the defendants willfully failed to answer the complaint); New York v. Green, 420 F. 3d 99, 109 (2d Cir. 2005) (finding that the district court did not err in finding that the defendants and their counsel had willfully and deliberately failed to answer the complaint).

Here, as stated above, Plaintiffs properly served Defendants with copies of the Summons and Complaint, Motion for Default and supporting documents and with copies of this Court's scheduling orders and the full docket sheet.  See ECF Nos. 10-13, 17, 21, 27, 29.  Despite being

properly served and having acknowledged the lawsuit by communicating with Plaintiffs'

counsel, Defendants failed to answer the Complaint, respond to Plaintiffs' Motion or otherwise

appear in the action.  The Court finds Defendants deliberately defaulted in this matter,

establishing the requisite willfulness.  See, e.g., Gesualdi v. Paladin Constr. Corp., 14 Civ. 7291

(DRH) (AKT), 2016 WL 943589, at *4 (E.D.N.Y. Feb. 18, 2016) ("There is no indication that

Defendants' failure to respond to the Amended Complaint, despite being properly served, was

anything but deliberate."); Sola Franchise Corp. v. Solo Salon Studios Inc., No. 14 Civ. 946,

2015 WL 1299259, at *6 (E.D.N.Y. Mar. 23, 2015) ("Defendant has not responded to

[p]laintiffs' motion for default judgment, has not appeared in this action, and has not

communicated with the [c]ourt in any way.  Accordingly, [d]efendant's failure to answer the

[c]omplaint and to respond to the instant motion is sufficient to establish willfulness.").

The second factor examines whether the defendant has a meritorious defense to the

plaintiff's claims.  See Double Green Produce, Inc., 387 F. Supp. 3d at 266.  The Court is not

aware of any meritorious claim Defendants could present in this matter.  See id.  Where a

defendant has not "filed an answer, there is no evidence of any defense."  Bridge Oil Ltd. v.

Emerald Reefer Lines, LLC, 06 Civ. 14226 (RLC) (RLE), 2008 WL 5560868, at *5 (S.D.N.Y.

Oct. 27, 2008) (internal citations omitted).

As to the third factor, Defendants' failure to respond to the Complaint or appear through

counsel despite Plaintiffs' good-faith efforts to serve and contact Defendants sufficiently

demonstrates that denying the Motion for Default Judgment would prejudice Plaintiffs because

"there are no additional steps available to secure relief in this Court."  Id. (citing U.S. v. Myers,

236 F. Supp. 3d 702, 708-09 (E.D.N.Y. 2017)); see Green, 420 F.3d at 110 (finding that "it was

not clear error for the District Court to conclude that vacating the default judgment would prejudice [the plaintiff] in ways beyond mere delay.").

As all three factors are satisfied, a default judgment is proper in the present circumstances. This Court respectfully recommends that the District Court find that Defendants' failure to answer the Complaint, appear through counsel and oppose the Motion for Default Judgment constitutes an admission of the allegations contained in the Complaint as fact for the purposes of an inquiry into liability.

### C.    Liability

On a default judgment motion, the defendant is deemed to have admitted all the well-pled factual allegations in the plaintiff's complaint. See Cement & Concrete Workers Dist. Council Welfare Fund, 699 F.3d at 234; see Finkel v. Romanowicz, 577 F.3d 79, 84 (2d Cir. 2009). "Nevertheless, it remains for the court to consider whether the unchallenged facts constitute a legitimate cause of action, since a party in default does not admit conclusions of law." Payamps, No. 16 Civ. 4895 (LDH) (SJB), 2018 WL 3742696, at *4 (citing Labarbera v. ASTC Labs. Inc., 752 F. Supp. 2d 263, 270 (E.D.N.Y. 2010) (citations & quotations omitted)).

### 1.    Liability Under The FLSA

To establish liability under the FLSA, a "plaintiff must prove the following: (1) the defendant is an employer subject to . . . [the] FLSA; (2) the plaintiff is an 'employee' within the meaning of . . . [the] FLSA; and (3) the employment relationship is not exempted from . . . [the] FLSA." Sanchez v. Ms. Wine Shop, 643 F. Supp. 3d 355, 366 (E.D.N.Y. 2022) (citing Payamps v. M & M Convenience Deli & Grocery Corp., No. 16 Civ. 4895 (LDH) (SJB), 2018 WL 3742696, at *4 (E.D.N.Y. May 18, 2018)).

### a. Defendants Are Employers Under The FLSA

The FLSA describes an "employer" as "any person acting directly or indirectly in the interests of an employer in relation to an employee."  29 U.S.C. § 203(d).  To make a <u>prima facie</u> showing of a violation under the minimum wage and overtime provisions of the FLSA, Plaintiff must be a covered employee under the FLSA.  <u>See</u> <u>Rodriguez v. Almighty Cleaning, Inc.</u>, 784 F. Supp. 2d 114, 121 (E.D.N.Y. 2011).

"Under the FLSA, the question of whether an employee-employer relationship exists is one of 'economic reality.'"  <u>Velu v. Velocity Exp., Inc.</u>, 666 F. Supp. 2d 300, 305 (E.D.N.Y. 2009) (citing <u>Goldberg v. Whitaker House Coop., Inc.</u>, 366 U.S. 28, 33 (1961)).  To determine whether an employee-employer relationship exists under the FLSA, courts in the Second Circuit have considered: "(1) the degree of control exercised by the employer over the workers, (2) the workers' opportunity for profit or loss and their investment in the business, (3) the degree of skill and independent initiative required to perform the work, (4) the permanence or duration of the working relationship, and (5) the extent to which the work is an integral part of the employer's business."  <u>Id.</u> at 306 (citing <u>Godoy v. Restaurant Opportunity Ctr. of N.Y., Inc.</u>, 615 F. Supp. 2d 186, 192-93 (S.D.N.Y. 2009)).

Other nonexclusive factors that courts may consider in the "economic realities" test include whether a plaintiff's alleged defendant employer "(1) had the power to hire and fire the employees, (2) supervised and controlled employee work schedules or conditions of employment, (3) determined the rate and method of payment, and (4) maintained employment records."  <u>Irizarry v. Catsimatidis</u>, 722 F.3d 99, 104 (2d Cir. 2013).  "[T]he hiring and firing of individuals who were in charge of [the plaintiff employees] is a strong indication of control."  <u>Id.</u> at 114 (internal citations & quotation marks omitted).

Plaintiffs allege that they were each employed by Corporate Defendants. ECF No. 1 ¶¶ 8-12. Mr. Ferreira was employed "as a taper and painter"; Mr. Florentino was employed "as a concrete worker and carpenter"; Mr. Oswaldo was employed "as a concrete worker, construction assistant and demolition worker"; Mr. Paz was employed "as a taper and painter"; and Mr. Olivares was employed "as a concrete worker and demolition worker." Id. ¶¶ 28, 35, 42, 49, 56. Corporate Defendants were "responsible for issuing Plaintiffs their wages." Id. ¶ 25. Individual Defendant "owns and operates" Corporate Defendants. Id. ¶ 17. As an "authorized agent" of Corporate Defendants, Individual Defendant "has power over personnel decisions," "has power over payroll decisions," "has the power to hire and fire employees," and was "responsible for setting Plaintiffs' rates of pay, paying Plaintiffs, setting Plaintiffs' schedules and determining at which locations Plaintiffs would perform work for [Corporate Defendants]." Id. ¶¶ 18-22. Individual Defendant thus had decisional authority over Plaintiffs' employers Corporate Defendants.

The Court finds that Plaintiffs' factual allegations sufficiently allege that Defendants were Plaintiffs' employers within the meaning of the FLSA.

**b. Defendants Are Covered By The FLSA**

An employer is subject to both the minimum wage and overtime provisions of the FLSA if (1) their employees are engaged in commerce, or (2) the employer is an 'enterprise engaged in commerce. See 29 U.S.C. §§ 206-07. "A defendant is an '[e]nterprise engaged in commerce or in the production of goods for commerce' if the defendant is an enterprise that: 'has employees engaged in commerce or in the production of goods for commerce, or that has employees handling, selling, or otherwise working on goods or materials that have been moved in or produced for commerce by any person; and . . . whose annual gross volume of sales made or

business done is not less than $500,000.'" Sanchez, 355 at 366-67 (citing 29 U.S.C. §§ 203(s)(1)(A)(i)-(ii)).  Courts in this Circuit have found that "'virtually every enterprise in the nation doing the requisite dollar volume of business is covered by the FLSA.'" Id. at 367 (citing Archie v. Grand Cent. P'ship, Inc., 997 F. Supp. 504, 530 (S.D.N.Y. 1998)).  "Courts may also infer that an employer is an enterprise engaged in commerce within the meaning of the FLSA where, based on the plaintiff's factual allegations accepted as true, 'it is simply inconceivable that none of the [goods] used . . . originated outside of New York.'" Sanchez, 355 at 367 (citing Shim v. Millennium Grp., No. 08 Civ. 4022 (FB) (VVP), 2009 WL 211367, at *3 (E.D.N.Y. Jan. 28, 2009)).

In their Complaint, Plaintiffs allege that Corporate Defendants "are, at present and has been at all times relevant to the allegation in the complaint, an integrated enterprise engaged in interstate commerce within the meaning of the FLSA in that the entity (i) has had employees engaged in commerce or in the production of goods for commerce, and handle, sell or otherwise work on goods or material that have been moved in or produced for commerce by any person: and (ii) has had an annual gross volume of sales of not less than $500,000.00."  ECF No. 1 ¶ 27. Plaintiffs do not provide additional information of the types of "goods or materials" Corporate Defendants sell or how these goods or materials were "moved in or produced."  See Burns v. Scott, 635 F. Supp. 3d 258, 276 (S.D.N.Y. 2022).  The Complaint does allege that, during their respective times of employment by Corporate Defendants, Mr. Ferreira worked as "a taper and painter"; Mr. Florentino worked as "a concrete worker and carpenter"; Mr. Oswaldo worked as "a concrete worker, construction assistant and demolition worker"; Mr. Paz worked as "a taper and painter"; and Mr. Olivares worked as "a concrete worker and demolition worker."  ECF No. 1 ¶¶ 8-12.  Based on the Complaint and the nature of Plaintiffs' employment for Corporate

Defendants, the Court finds that it is "simply inconceivable that none of the [goods] used" by Plaintiffs for their work, such as paint, paintbrushes, hardware or construction tools "originated outside of New York.'" Shim, 2009 WL 211367, at *3.  The Court thus finds that under the FLSA Corporate Defendants are an enterprise engaged in commerce and that Plaintiffs are thus protected by the FLSA, including its overtime provisions.

### 2.  Liability Under The NYLL

The NYLL defines an employee as "any person employed for hire by an employer in any employment," N.Y. Lab. L. § 190(2), and an employer is described as "any person, corporation, limited liability company, or association employing any individual in any occupation, industry, trade, business or service."  Id. § 190(3).  Courts in the Second Circuit have established that the NYLL's definitions of "employee" and "employer" are analogous to those under the FLSA.  See Singh v. Mowla, 19 Civ. 4687 (PKC) (LB), 2022 WL 17820099, at *8 n.8 (E.D.N.Y. Sept. 30, 2022) (citing Santillan v. Henao, 822 F. Supp. 2d 284, 292 (E.D.N.Y. 2011)).

"Although slightly different than the FLSA inquiry, the standard for determining a worker's status as an employee or independent contractor under [the NYLL] is similar, and accounts for some of the same factors.  Instead of focusing on the economic reality of the situation, New York law focuses on the degree of control exercised by the purported employer over the results produced or the means used to achieve the results."  Velu, 666 F. Supp. 2d at 306-07.  "In determining whether a person is an 'employer' for purposes of NYLL . . . courts consider whether the alleged employer '(1) had the power to hire and fire the employees, (2) supervised and controlled employee work schedules or conditions of employment, (3) determined the rate and method of payment, and (4) maintained employment records.'"  In re Stage Presence Inc., 555 B.R. 166, 179 (Bankr. S.D.N.Y. 2016) (citing Herman v. RSR Sec.

17

Servs., 172 F.3d 132, 139 (2d Cir. 1999)).  In order to assess control under the NYLL, Second

Circuit courts have also looked at "whether the worker (1) worked at his own convenience, (2)

was free to engage in other employment, (3) received fringe benefits, (4) was on the employer's

payroll, and (5) was on a fixed schedule."  Velu, 666 F. Supp. 2d at 307 (internal citations &

quotation marks omitted).

 Because Plaintiffs allege an employer-employee relationship under the FLSA, given the

close overlap of the NYLL and FLSA employer-employee tests and the allegations of economic

control over Plaintiffs, see ECF No. 28 at 5, 14, Plaintiffs have sufficiently alleged that

Individual Defendant is employer within the meaning of the NYLL, and Plaintiffs are entitled to

the protections of the NYLL.

### 3.  Defendants Failed To Compensate Plaintiffs For Overtime Work Under The FLSA And The NYLL

 Plaintiffs claim that Defendants failed to pay Plaintiffs overtime wages for hours worked

in excess of forty (40) hours per week at a wage rate of one and a half (1.5) times the regular

wage to which Plaintiffs were entitled under the FLSA and the NYLL.  See ECF No. 1 ¶¶ 82, 87.

 The FLSA's overtime provision states that "no employer shall employ any of his

employees . . . for a workweek longer than forty hours unless such employee receives

compensation for his employment in excess of the hours above specified at a rate not less than

one and one-half times the regular rate at which he is employed."  29 U.S.C. § 207(a)(1).  Under

the NYLL, a covered employee "who works more than eight hours in any one day or more than

forty hours in any workweek shall be paid wages for such overtime at a rate not less than one-

and-one-half times his prevailing basic cash hourly rate."  N.Y. Lab. L. § 232.

 Although courts in the Second Circuit have "demanded that plaintiffs provide some

degree of 'specificity' in order to sufficiently plead an FLSA overtime claim," Herrera v.

Comme des Garcons, Ltd., 84 F.4th 110, 114 (2d Cir. 2023) (citing Nakahata v. New York-Presbyterian Healthcare Sys., Inc., 723 F.3d 192, 200 (2d Cir. 2013)), the Second Circuit Court of Appeals recently held that "an employer must pay for all work it knows about or requires, even if the employee does not specifically request compensation for it."  Perry v. City of N.Y., 78 F.4th 502, 509 (2d Cir. 2023).  "Employers may, of course, require employees to report overtime work, and an employee's failure to do so will in many circumstances allow the employer to disclaim the knowledge that triggers FLSA obligations.  But an employer that nonetheless requires, knows about, or should know about work must compensate the worker, regardless of whether pay is requested and regardless of whether the employer knows the worker will not be paid."  Id. at 512.  The Court now looks at each Plaintiff's overtime claim.

### a. Daniel De Melo Ferreira

From in or around November 2020 until in or around March 2021, Mr. Ferreira "regularly worked approximately six (6) to seven (7) days per week, during his employment with the Defendants" and "regularly required to work fifty-one (51) to fifty-nine and a half (59.5) hours, or more hours." ECF No. 1 ¶¶ 29, 31.  Mr. Ferreira "was paid by Defendants a flat daily wage of approximately $200.00 per day from in or around November 2020 until in or around March 2021," and, although Mr. Ferreira "worked approximately fifty-one (51) to fifty-nine and a half (59.5) hours or more per week during his employment, Defendants did not pay Plaintiff time and a half (1.5) for hours worked over forty (40)."  Id. ¶¶ 32-33.  Given the variability of Mr. Ferreira's hours, he seeks damages for an average number of hours per week of 55.25.  See ECF No. 27-8 at 2.

The Court finds that Mr. Ferreira is entitled to overtime wages under the NYLL and the FLSA for all hours worked over forty (40) hours a week from in or around November 2020 until in or around March 2021.

### b.  Felix Florentino

From in or around November 2020 until in or around March 2021, Mr. Florentino "regularly worked approximately five (5) days per week during his employment with the Defendants and six (6) days per week approximately three or four times during his employment. Id. ¶ 36.  Mr. Florentino "was regularly required to work forty-two and a half (42.5) hours, or more hours, from in or around November 2020 until in or around March 2021 with the exception of when he worked six days per week and would work approximately fifty-one (51) hours per week." Id. ¶ 38.  Mr. Florentino was paid by Defendants a flat rate of approximately $25.00 per hour from in or around November 2020 until in or around March 2021, and although Mr. Florentino worked approximately forty-two (42) per week during his employment, "Defendants did not pay Plaintiff time and a half (1.5) for hours worked over forty (40)."  Id. ¶¶ 32-40.

The Court finds that Mr. Florentino is entitled to overtime wages under the NYLL and the FLSA for all hours worked over forty (40) hours a week from in or around November 2020 until in or around March 2021.

### c.  Marvin Yovany Oswaldo

From in or around December 2020 until in or around February 2021, Mr. Oswaldo was "regularly worked approximately six (6) to seven (7) days per week, during his employment with the Defendants" and "regularly required to work fifty-one (51) to fifty-nine and a half (59.5) hours, or more hours." ECF No. 1 ¶¶ 43, 45.  Mr. Oswaldo "was paid by Defendants a flat daily wage of approximately $130.00 per day," and although Mr. Oswaldo "worked approximately

fifty-one (51) to fifty-nine and a half (59.5) hours or more per week during his employment, Defendants did not pay Plaintiff time and a half (1.5) for hours worked over forty (40)." Id. ¶¶ 46-47. Given the variability of Mr. Oswaldo's hours, he seeks damages for an average number of hours per week of 55.25. See ECF No. 27-8 at 4.

The Court finds that Mr. Oswaldo is entitled to overtime wages under the NYLL and the FLSA for all hours worked over forty (40) hours a week from in or around December 2020 until in or around February 2021.

### d. Alexis Aranda Paz

From in or around December 2020 until in or around February 2021, Mr. Paz was "regularly worked approximately six (6) to seven (7) days per week, during his employment with the Defendants" and "regularly required to work fifty-one (51) to fifty-nine and a half (59.5) hours, or more hours." ECF No. 1 ¶¶ 50, 52. Mr. Paz "was paid by Defendants a flat daily wage of approximately $170.00 per day," and although Mr. Paz "worked approximately fifty-one (51) to fifty-nine and a half (59.5) hours or more per week during his employment, Defendants did not pay Plaintiff time and a half (1.5) for hours worked over forty (40)." Id. ¶¶ 53-54. Because of the variability of Mr. Paz's hours, he seeks damages for an average number of hours per week of 55.25. See ECF No. 27-8 at 5.

The Court finds that Mr. Paz is entitled to overtime wages under the NYLL and the FLSA for all hours worked over forty (40) hours a week from in or around December 2020 until in or around February 2021.

### e. Jeronimo Orellana Olivares

From in or around November 2020 until in or around February 2021, Olivares was "regularly worked approximately six (6) days per week, during his employment with the

Defendants" and "regularly required to work fifty-one (51) or more hours." ECF No. 1 ¶¶ 57, 59. Mr. Olivares "was paid by Defendants a flat daily wage of approximately $170.00 per day," and although Mr. Olivares "worked approximately fifty-one (51) hours or more per week during his employment, Defendants did not pay Plaintiff time and a half (1.5) for hours worked over forty (40)." Id. ¶¶ 60-61.

The Court finds that Mr. Olivares is entitled to overtime wages under the NYLL and the FLSA for all hours worked over forty (40) hours a week from in or around November 2020 until in or around February 2021.

This Court finds that Plaintiffs sufficiently allege that Defendants failed to pay overtime compensation at the statutory rate of time and one-half to Plaintiffs for all hours worked in excess of forty (40) hours per workweek due to an improper fixed salary. This Court respectfully recommends that the District Court find Defendants liable to Plaintiffs for failing to pay them overtime compensation pursuant to the FLSA and the NYLL.

### 4. Defendants Failed To Compensate Plaintiffs For All Hours Worked Under The NYLL

In addition to unpaid overtime, Plaintiffs allege that Defendants failed to compensate Plaintiffs for all hours worked in violation of the FLSA and the NYLL. ECF No. 1 ¶¶ 90, 95. Plaintiffs bring these claims under the FLSA's minimum-wage provision at 29 U.S.C. § 206(a) and Article 6, New York Labor Law, on "Payment of Wages" generally. See id.

"The FLSA statute requires payment of minimum wages and overtime wages only." Kinkead v. Humana at Home, Inc., 450 F. Supp. 3d 162, 182 (D. Conn. 2020); see 29 U.S.C. §§ 201-19 (2006). As New York laws permit a greater recovery, the Court discusses liability under the New York Labor Law.

New York's wage-and-hour laws are primarily found in Article 6, N.Y. Lab. Law §§ 190 et seq. Article 6 defines "wages" as "the earnings of an employee for labor or services rendered, regardless of whether the amount of earnings is determined on a time, piece, commission or other basis." N.Y.L.L. § 190(1). Under NYLL § 191, "clerical and other workers shall be paid the wages earned in accordance with the agreed terms of employment, but not less frequently than semi-monthly, on regular pay days designated in advance by the employer." Id. § 191(1)(d). "Under NYLL § 198(1-a),

> In any action instituted in the courts upon a wage claim by an employee . . . in which the employee prevails, the court shall allow such employee to recover the full amount of any underpayment, all reasonable attorney's fees, prejudgment interest as required under the [CPLR], and, unless the employer proves a good faith basis to believe that its underpayment of wages was in compliance with the law, an additional amount as liquidated damages equal to one hundred percent of the total amount of wages found to be due . . . .

N.Y. Lab. Law § 198(1-a). Where a non-exempt employee has an agreement with his or her employer to be paid at a rate greater than the minimum wage, several courts have found that the failure to pay the promised rate is a violation of NYLL § 191, entitling the employee to damages under NYLL § 198." Cavalotti v. Daddyo's BBQ, Inc., No. 15 Civ. 6469 (PKC) (VMS), 2018 WL 5456654, at *13 (E.D.N.Y. Sept. 8, 2018), report & recommendation adopted by text order (E.D.N.Y. Sep't 25, 2018); see Sanchez v. Hyper Structure Corp., No. 19 Civ. 4524 (KAM) (PK), 2023 WL 281571, at *8 (E.D.N.Y. Feb. 24, 2023).[2]

---

[2] Some courts in the Second Circuit have found that NYLL § 191 only allows for the recovery of unpaid wages at the minimum-wage rate, rather than at an employee's regular hourly rate. In Ansoralli, for example, the district court calculated the plaintiffs' unpaid wages based on New York's minimum wage on the basis that the plaintiffs "pleaded no substantive right to unpaid wages other than those granted by FLSA and NYLL, which on their own do not provide a basis for a claim under § 191." Ansoralli v. CVS Pharmacy, Inc., No. 16 Civ. 1506 (CBA) (JRR), 2017 WL 8790986, at *7 (E.D.N.Y. Sep. 29, 2017). The Ansoralli Court noted that "a traditional breach of contract claim is the more obvious means by which a party can seek redress for a failure to pay contractually mandated wages" under NYLL § 191. Id. "Plaintiffs, however, do

"In addition to requiring payment of minimum wages, the NYLL provides for recovery of unpaid promised wages under Article 6, Section 191." Sanchez, No. 19 Civ. 4524, 2023 WL 2815717, at *8. Although the plaintiffs in Sanchez did not bring their unpaid wage claim as a breach-of-contract claim, the court found that because the plaintiffs "were promised $240 per day of work by [their employer], they are entitled to recover their unpaid promised wages under NYLL § 191." Id. Similarly, in Coley, the court applied the plaintiffs' "regular hourly rates to calculate the amount of unpaid wages they are due under their gap-time claims."[3] Coley v. Vanguard Urban Improvement Assoc., Inc., 12 Civ. 5565 (PKC) (RER), 2018 WL 1513628, at *10 (E.D.N.Y. Mar. 27, 2018). The court in Coley applied the plaintiffs' "regular hourly rates" to give "fuller effect to the remedial purposes of NYLL." Id. "This means that an employee has a cause of action to recover the full amount of unpaid wages that he or she is entitled to under NYLL § 198 . . . . If, in response to a gap-time claim, the Court were to only award compensation at the minimum wage rate, the employer would be paying the employee less than what the employer should have paid the employee for his or her work, and the employee would recover less than what he or she had agreed to work for." Id.

---

not state a claim for breach of contract in their complaint; rather, their sole contention as it relates to § 191 is that '[a]s a result [of the failure to pay Plaintiffs for off-the-clock work], Defendant violated [NYLL] for failure to pay wages.'" Id. The court also noted that, because NYLL § 191 is titled 'Frequency of payments' "[i]t would seem odd, indeed, that a section so-titled would . . . be intended as the catch-all to provide a remedy for nonpayment of contractual (as opposed to statutory) wages that are not otherwise covered by the NYLL." Id.; see McGlone v. Contract Callers, Inc., 114 F. Supp. 3d 172, 173 (S.D.N.Y.2015) (applying minimum-wage rate to the plaintiff's unpaid wage claim where said claim was brought under N. Y. Lab. L. §§ 650 et seq. ("Minimum Wage Act")).

[3] "A gap-time claim is one in which an employee has not worked 40 hours in a given week but seeks recovery of unpaid time worked, or in which an employee has worked over 40 hours in a given week but seeks recovery for unpaid work under 40 hours." Lundy v. Catholic Health Sys. of Long Island Inc., 711 F.3d 106, 115 (2d Cir. 2013). Although, here, Plaintiffs do not explicitly refer to their unpaid-wages claim as a "gap-time claim," they seek "recovery for unpaid work under 40 hours" under NYLL Article 6. Id.; see ECF No. 1 ¶ 95.

24

Here, Plaintiffs seek to recover their unpaid wages at their converted or regular hourly rate rather than under New York minimum wage.  See ECF No. 27-8 (calculating Plaintiffs' unpaid wages based on their respective regular hourly rates).  Although Plaintiffs bring their unpaid-wage claim under Article 6 generally without referring to specific provisions in the NYLL, see ECF No. 1 ¶ 95, the Court finds that §§ 190 et seq. of Article 6 apply to Plaintiffs' unpaid wage claim in that these provisions allow for worker to be "paid the wages earned in accordance with the agreed terms of employment."  N.Y.L.L. § 191(1)(d).  Further, as Plaintiffs bring this claim under Article 6 ("Payment of Wages") rather than under Article 19 ("Minimum Wage Act"), the Court agrees with the courts in Cavalotti, Sanchez and Coley that, under Article 6, Plaintiffs are entitled to receive their regular rate of pay for unpaid wages rather than minimum wage.

Here, Plaintiffs claim that Mr. Ferreira "was not compensated at all for his last approximately five (5) weeks of employment by Defendants."  ECF No. 1 ¶ 34.  Mr. Florentino "was not compensated at all for his last eight (8) weeks of employment by Defendants."  Id. ¶ 41.  Mr. Oswaldo "was not compensated at all for his last three (3) weeks of employment by Defendants."  Id. ¶ 48.  Mr. Paz "was not compensated at all for his last week of employment by Defendants."  Id. ¶ 55.  Mr. Olivares "was not compensated at all for his last three (3) weeks of employment by Defendants."  Id. ¶ 62.  Because Plaintiffs were paid $0 per hour for these periods, the Court finds that they are entitled under Article 6 of the NYLL to recover their regular hourly rate with overtime for those hours.

## IV.    Damages

### A.    Overtime Wages Under The FLSA And The NYLL

Plaintiffs seek reimbursement for the overtime wages that they should have received pursuant to both the FLSA and the NYLL.

"Under both the FLSA and NYLL, an employee is entitled to overtime pay, calculated at one and one-half times the employee's regular hourly rate, for hours worked in excess of 40 in one work week."  Martinez v. Alimento Saludables Corp., No. 16 Civ. 1997 (DLI) (CLP), 2017 WL 5033650, at *15 (E.D.N.Y. Sep. 22, 2017); see 29 U.S.C. § 207(a)(2)(C); N.Y. Lab. L. § 191; Sanchez, 2023 WL 2815717, at *10 ("[U]nder the NYLL, for non-hospitality industry workers who are paid hourly, the 'regular rate' is the regular hourly rate; if paid by salary, the regular rate is the total weekly salary divided by the number of hours worked.")  "The method for calculating overtime under both the FLSA and NYLL is the same.  Even if the plaintiffs are owed overtime wages in violation of both the FLSA and the NYLL, they are not entitled to recover double damages."  Martinez, 2017 WL 5033650, at *15.  "Courts may award damages under whichever statute permits the greater recovery."  Gao v. Jian Song Shi, No. 18 Civ. 2708 (ARR) (LB), 2021 WL 1949275, at *12 (E.D.N.Y. Apr. 20, 2021).  "Where a higher minimum wage than that set in the Fair Labor Standards Act is applicable to an employee by virtue of such other legislation, the regular rate of the employee, as the term is used in the [FLSA], cannot be lower than such applicable minimum, for the words 'regular rate at which he is employed' as used in section 7 must be construed to mean the regular rate at which he is lawfully employed."  29 C.F.R. § 778.5.  "The term "regular rate of pay" should be interpreted to mean the higher of the employee's hourly rate and minimum wage under either state or federal law."  Martinez, 2017 WL 5033650, at *15.

"Under the FLSA, the regular hourly rate of pay of an employee is determined by dividing his total remuneration for employment (except statutory exclusions) in any workweek by the total number of hours actually worked[.]"  Bustillo v. K&J Constr. Consultant Serv., Inc., No. 20 Civ 478 (RPK) (CLP), 2022 WL 2467204, at *7 (E.D.N.Y. Feb. 25, 2022) (internal

citations & quotation marks omitted); <u>see</u> <u>Calle v. Pizza Palace Café LLC</u>, No. 20 Civ. 4178 (LDH) (LB), 2022 WL 609142, at *9 (E.D.N.Y. Jan 4, 2022) ("Pursuant to federal regulation, an employee's regular rate of pay is determined by dividing his salary by the number of hours it is intended to compensate."). "This regular rate is then multiplied by one and one-half to determine the employee's overtime rate." <u>Calle</u>, 2022 WL 609142, at *9.

The Court now reviews each Plaintiff's overtime damages calculations.

### 1. Mr. Ferreira's Overtime Wages

Mr. Ferreira was employed by Defendants from November 1, 2020 until March 31, 2021 and worked between six (6) and seven (7) days a week. ECF No. 1 ¶ 28-29; ECF No. 27-8. This period amounts to about 21.43 weeks during which Mr. Ferreira worked about 8.5 hours every day for a total of fifty-one (51) to fifty-nine and a half (59.5) hours, or more hours per week. Mr. Ferreira worked about 15.25 overtime hours per week. <u>Id.</u> at 33; ECF No. 27-8. Because Mr. Ferreira received a flat rate of $200 per day, his regular hourly pay was $23.5/hour, and Mr. Ferreira is entitled to overtime pay of $11.76 ($23.5 x 0.5) for every hour worked overtime. Mr. Ferreira is entitled to recover $3,844.54 in overtime damages.

### 2. Mr. Florentino's Overtime Wages

Mr. Florentino was employed by Defendants from November 1, 2020 until March 15, 2021 and worked about five (5) days a week. ECF No. 27-8. This period amounts to about 21.43 weeks during which Mr. Florentino worked about 8.5 hours every day for a total of around 42.5 hours per week. <u>Id.</u> Mr. Florentino worked about 2.5 overtime hours per week. <u>Id.</u> Mr. Florentino's regular hourly pay was $25/hour, and Mr. Florentino is entitled to overtime pay of $12.5 ($23.5 x 0.5) for every hour worked overtime. Mr. Florentino is entitled to recover $669.64 in overtime damages.

### 3. Mr. Oswaldo's Overtime Wages

Mr. Oswaldo was employed by Defendants from December 1, 2020 until February 4, 2021 and worked between six (6) and seven (7) days a week. ECF No. 27-8. This period amounts to about 21.43 weeks during which Mr. Oswaldo worked about 8.5 hours every day for a total of around 55.25 hours per week on average. Id. Mr. Oswaldo worked about 15.25 overtime hours per week. Id. Mr. Oswaldo's regular hourly pay was $15.29/hour, and Mr. Oswaldo is entitled to overtime pay of $7.65 ($15.29 x 0.5) for every hour worked overtime. Mr. Oswaldo is entitled to recover $2,498.95 in overtime damages.

### 4. Mr. Paz's Overtime Wages

Mr. Paz was employed by Defendants from December 1, 2020 until February 28, 2021 and worked between six (6) and seven (7) days a week. ECF No. 27-8. This period amounts to about 12.71 weeks during which Mr. Paz worked about 8.5 hours every day for a total of around 55.25 hours per week on average. Id. Mr. Paz worked about 15.25 overtime hours per week. Id. Mr. Paz's regular hourly pay was $20/hour, and Mr. Paz is entitled to overtime pay of $10 ($10 x 0.5) for every hour worked overtime. Mr. Paz is entitled to recover $1,938.93 in overtime damages.

### 5. Mr. Olivares's Overtime Wages

Mr. Olivares was employed by the Defendants from November 1, 2020 until February 28, 2021 and worked six (6) days a week. ECF No. 27-8. This period amounts to 17 weeks during which Mr. Olivares worked about 8.5 hours every day for a total of 51 hours per week. Id. Olivares worked 11 overtime hours per week. Id. Mr. Olivares's regular hourly pay was $15.29/hour, and Mr. Olivares is entitled to overtime pay of $7.65 ($15.29 x 0.5) for every hour worked overtime. Mr. Olivares is entitled to recover $1,430.00 in overtime damages.

### B.    Unpaid Wages Under The NYLL

### 1.    Mr. Ferreira's Unpaid Wages

Mr. Ferreira "was not compensated at all for his last approximately five (5) weeks of employment by the Defendants."  ECF No. 1 at ¶ 34.  Under Article 6 of the NYLL, Mr. Ferreira is entitled to receive the flat rate of $200 per day for the six (6) to seven (7) days per week he worked for 5 weeks.  Averaging the numbers of days Mr. Ferreira worked per week to 6.5, Mr. Ferreira is entitled to $6,500 in unpaid wages [(200 x 6.5) x 5].

### 2.    Mr. Florentino's Unpaid Wages

Mr. Florentino "was not compensated at all for his last approximately eight (8) weeks of employment by the Defendants."  ECF No. 1 at ¶ 41.  Under Article 6 of the NYLL, Mr. Florentino is entitled to receive the flat rate of $25.00 per hour for the forty-two and a half (42.5) hours he worked per week for eight (8) weeks with the exception of when he worked six days per week and would work approximately fifty-one (51) hours per week.  Averaging the numbers of hours Mr. Florentino worked per week to 40, Mr. Florentino is entitled to $8,000 in unpaid wages [(25 x 40) x 8].

### 3.    Mr. Oswaldo's Unpaid Wages

Mr. Oswaldo "was not compensated at all for his last three (3) weeks of employment by the Defendants."  ECF No. 1 at ¶ 48.  Under Article 6 of the NYLL, Mr. Oswaldo is entitled to receive his converted hourly rate of $15.29 per hour for the average of 55.25 hours he worked per week for eight (3) weeks.  Mr. Oswaldo is entitled to $2,534.30 in unpaid wages [(15.29 x 55.25) x 3].

4.      **Mr. Paz's Unpaid Wages**

Mr. Paz "was not compensated for his last week of employment by the Defendants." ECF No. 1 at ¶ 55.  Under Article 6 of the NYLL, Mr. Paz is entitled to receive his converted hourly rate of $20 per hour for the average of 55.25 hours he worked for the one (1) unpaid week.  Mr. Paz is entitled to $1,105 in unpaid wages (20 x 55.25).

5.      **Mr. Olivares's Unpaid Wages**

Mr. Olivares "was not compensated at all for his last three (3) weeks of employment by the Defendants."  ECF No. 1 at ¶ 62. Under Article 6 of the NYLL,  Mr. Olivares is entitled to receive his converted hourly rate of $15.29 per hour for the 51 hours he worked for the three (3) unpaid weeks.  Mr. Olivares is entitled to $2,340 in unpaid wages [(15.29 x 51) x 3].

C.      **Liquidated Damages**

Because "[t]he Second Circuit precludes a plaintiff from recovering liquidated damages under both the FLSA and the NYLLA . . . [a] plaintiff should recover 'under the statute that provides the greatest relief.'"  Burns v. Scott, 635 F. Supp. 3d 258, 281 (S.D.N.Y. 2022) (citing Almanzar v. 1342 St. Nicholas Ave. Rest. Corp., No. 14 Civ. 7850 (VEC) (DF), 2016 WL 8650464, at *9 (S.D.N.Y. Nov. 7, 2016)) (internal citation omitted).  "The NYLL allows for prejudgment interest in addition to liquidated damages, see NYLL § 198(1-a), but the FLSA does not."  Id.  Courts in the Second Circuit have allowed plaintiffs to recover the entirety of their unpaid wages where defendants have defaulted.  See id.; Schalaudek v. Chateau 20th St. LLC, No. 16 Civ. 11 (WHP) (JLC), 2017 WL 729544, at * 5 (S.D.N.Y. Feb. 24, 2017).

Thus, the Court finds that, in addition to their respective compensatory damages, Mr. Ferreira is entitled to recover $10,344.54 in liquidated damages (3,844.54 + 6,500.00); Mr. Florentino is entitled to recover $8,669.64 in liquidated damages (669.64 + 8,000.00); Mr.

Oswaldo is entitled to recover $5,033.25 in liquidated damages (2,498.95 + 2,534.30); Mr. Paz is entitled to recover $3,043.93 in liquidated damages (1,938.93 + 1,105.00); and Mr. Olivares is entitled to recover $3,770.00 in liquidated damages (1,430.00 + 2,340.00).

### D.    Prejudgment Interest

Plaintiffs seek to recover prejudgment interest.  See ECF No. 1 at 13.

"It is well settled that in an action for violations of the [FLSA] prejudgment interest may not be awarded in addition to liquidated damages."  Fermin v. Las Delicias Peruanas Restaurant, Inc., 93 F. Supp. 3d 19, 48 (E.D.N.Y. 2015) (internal citations & quotation marks omitted); see Zabrodin v. Silk 222, Inc., -- F. Supp. 3d --, 2023 WL 8009319, at *12 (E.D.N.Y. Nov. 12, 2023).  "In contrast to the FLSA, the NYLL permits the award of both liquidated damages and pre-judgment interest.  This dual availability occurs because New York State views liquidated damages as punitive, and not compensatory, such that pre-judgment interest is not a duplicative damages award."  Id.  "'Prejudgment interest is calculated [ ] on the unpaid wages due under the NYLL, not on the liquidated damages awarded under the state law.'"  Id. at 49 (citing Mejia v. East Manor USA Inc., No. 10 Civ. 4313 (NG), 2013 WL 3023505, at *8 n.11 (E.D.N.Y. Apr. 19, 2013)).

The statutory rate of interest in New York is nine percent per annum.  N.Y.C.P.L.R. § 5004.  Where damages were incurred at various times, interest may be calculated from a single reasonable intermediate date.  Id. § 5001(b).  "Most courts in this district calculate simple prejudgment interest in NYLL actions from the midpoint date of the claims through the date judgment is entered."  Sanchez, 643 F. Supp. 3d at 380 (internal citations & quotation marks omitted).

Here, the relevant dates of Plaintiffs' employment dates are from November 1, 2020 to March 31, 2021.  The midpoint of Plaintiffs' employment dates was thus approximately January 14, 2021.  As stated above, Plaintiffs are entitled to compensatory damages under the NYLL on their time-gap and overtime claims throughout this period of time.  To calculate the per diem interest rate, the Court multiplies the statutory rate of 9% per annum by the total compensatory damages each Plaintiff received under the NYLL, then divides by 365 days.

Thus, the Court respectfully recommends that prejudgment interest be awarded from January 14, 2021, to the date judgment for each Plaintiff as follows:

- on Mr. Ferreira's compensatory damages award of $10,344.54 at a per diem rate of $2.55 (($10,344.54 × 0.09)/365);

- on Mr. Florentino's compensatory damages award of $8,669.64 at a per diem rate of $2.14 (($8,669.64 × 0.09)/365);

- on Mr. Oswaldo's compensatory damages award of $5,033.25 at a per diem rate of $1.24 (($5,033.25 × 0.09)/365);

- on Mr. Paz's compensatory damages award of $3,043.93 at a per diem rate of $0.75 (($3,043.93 × 0.09)/365); and

- on Mr. Olivares's compensatory damages award of $3,770.00 at a per diem rate of $0.93 (($3,770.00 × 0.09)/365).

## V.    Standing As To The NYLL Wage-statement And Wage-notice Claims Is Lacking

Plaintiffs brought claims under NYLL § 195 as to wage statements and wage notices. The Court raised with counsel during the March 11, 2024 conference its concern that the Plaintiffs lacked standing to bring the New York Labor Law § 195 claims because Plaintiffs did not allege particularized injuries sufficient to have Article III standing.  The Article III standing

question raised by the Court as to the NYLL wage-statement and wage-notice claims requires consideration on this Motion for Default Judgment.

The NYLL requires employers to provide employees, at the time of hiring, both in English and in the employee's primary language, a notice with the "rate or rates of pay and basis thereof," and the employer's official name, address, and telephone number.  N.Y. Lab. L. § 195(1)(a).  An employee who does not receive a wage notice within ten business days of their first day of employment may recover $50.00 for "each work day that the violations occurred or continue to occur, but not to exceed a total of five thousand dollars."  Id. § 198(1-b).  NYLL also requires employers to provide employees wage statements with every payment of wages that list information such as the pay period, names of the employee and employer, the employer's contact information, and the rate and basis for pay.  See id. § 195(3).  An employee who does not receive wage statements with each payment of wages may recover $250.00 for "each work day that the violations occurred or continue to occur, but not to exceed a total of five thousand dollars."  Id. § 198(1-d).

Plaintiffs raised their NYLL claims for wage statements and wage notices in this federal action.  See ECF No. 1 ¶¶ 62-63, 97-102.  Under Article III of the United States Constitution, a federal court may only exercise subject matter jurisdiction over cases in which the plaintiff has standing.  See Lujan v. Defs. of Wildlife, 504 U.S. 555, 560 (1992).  A plaintiff bears the burden of establishing the three "irreducible constitutional minimum" elements of Article III standing, which are that the plaintiff must have "(1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision."  Spokeo, Inc. v. Robins, 578 U.S. 330, 338 (2016) (citing Lujan, 504 U.S. at 560-61).  The plaintiff, as the party invoking federal jurisdiction, bears the burden of establishing

these three elements.  See id.  In TransUnion LLC v. Ramirez, 594 U.S. 413 (2021), the Supreme

Court considered allegations that the defendant had violated the Fair Credit Reporting Act by

failing to use reasonable procedures, leading to inaccuracies in the plaintiffs' credit files.  With

respect to a subset of the plaintiffs whose inaccurate credit reports were never disseminated to

third parties, the Supreme Court noted the requirement that a "plaintiff's injury in fact be

'concrete'—that is, 'real, and not abstract.'"  Id. at 2204.  "Central to assessing concreteness,"

the Supreme Court explained, "is whether the asserted harm has a 'close relationship' to a harm

traditionally recognized as providing a basis for a lawsuit in American courts—such as physical

harm, monetary harm, or various intangible harms[.]"  Id. at 2200.  "For standing purposes, . . .

an important difference exists between (i) a plaintiff's statutory cause of action to sue a

defendant over the defendant's violation of federal law, and (ii) a plaintiff's suffering concrete

harm because of the defendant's violation of federal law."  Id. at 2205.  "Only those plaintiffs

who have been concretely harmed by a defendant's statutory violation may sue that private

defendant over that violation in federal court."  Id.  "No concrete harm; no standing."  Id. at

2214.  Applying TransUnion, the Second Circuit in Maddox v. Bank of New York Mellon Trust

Co., N.A., 19 F.4th 58 (2d Cir. 2021), found that the plaintiffs lacked Article III standing to seek

statutory damages from a bank for its violation of New York's mortgage-satisfaction-recording

statutes.  Although the Second Circuit noted various concrete harms that could flow from the

delayed recording of a discharge of mortgage, it held that the Maddox Plaintiffs lacked Article

III standing because they did not allege that they suffered such harms due to the bank's violation.

See id. at 64-66.

Courts have reached different conclusions when weighing the sufficiency of a plaintiff's

allegations to show Article III standing to pursue NYLL wage-notice and wage-statement claims

in federal court.  Some cases have found that the denial of the right to information about one's wages tied to an entitlement to one's unpaid wages is sufficient to satisfy Article III.  See Imbarrato v. Banta Mgmt. Servs., Inc., No. 18 Civ. 5422 (NSR), 2020 WL 1330744, at *7-8 (S.D.N.Y. Mar. 20, 2020) (finding that the requirement that employers provide wage notices and statements was meant to protect an employee's concrete interest in being paid what he is owed under the NYLL); Hicks v. T.L. Cannon Mgmt. Corp., No. 13 Civ. 6455 (EAW), 2018 WL 2440732, at *5 (W.D.N.Y. Mar. 13, 2018) (finding that "violation of the procedures created by the relevant provisions of the NYLL . . . are specifically designed to guard against the concrete harm that workers are subject to when they are mis- or uninformed regarding their rights and the responsibilities of their employers").  Others have found that the plaintiffs have not or cannot allege an adequate concrete injury to satisfy Article III.  See, e.g., Sevilla v. House of Salads One LLC, No. 20 Civ. 6072 (PKC) (CLP), 2022 WL 954740, at *7 (E.D.N.Y. Mar. 30, 2022) (holding that "it is not clear that [such] policies led to an 'injury' that can be recognized by a federal court" (citations omitted)); Wang v. XBB, Inc., No. 18 Civ. 7341 (PKC) (ST), 2022 WL 912592, at *13 (E.D.N.Y. Mar. 29, 2022) ("Plaintiff has not linked any injury-in-fact to [the d]efendants' failure to provide statutory notices under the NYLL, so she lacks standing to recover on that claim." (citation omitted)); Francisco v. NY Tex Care, Inc., No. 19 Civ. 1649 (PKC) (ST), 2022 WL 900603, at *7 (E.D.N.Y. Mar. 28, 2022) ("While those may be technical violations of the NYLL, neither [p]laintiff nor the record demonstrate how those technical violations led to either a tangible injury or something akin to a traditional cause of action[.]"); Perez v. Postgraduate Ctr. for Mental Health, No. 19 Civ. 931 (EK) (PK), 2021 WL 3667054, at *7 (E.D.N.Y. Aug. 18, 2021) (finding that the plaintiff lacked Article III standing for a claim alleging that the content of his wage notices violated the NYLL because of an inaccuracy

because "not all inaccuracies cause harm or present any material risk of harm" (quoting Spokeo, 136 S. Ct. at 1550)).

In the present case, Plaintiffs do not allege any harm flowing from these alleged violations of New York Law.  See ECF No. 1 ¶¶ 63-65, 97-102.  They thus lack standing to bring these New York Labor Law § 195 claims in federal court.  Per their letter at ECF No. 33, Plaintiffs indicate their desire to withdraw these claims if the Court lacks jurisdiction, which it does.  Accordingly, the Court respectfully recommends that these claims should be deemed withdrawn.

## VI.   Conclusion

For the reasons stated above, I respectfully recommend that Plaintiffs' Motion for Default Judgment be granted, except as to the NYLL § 195 claims which should be deemed withdrawn, and that judgment be entered in Plaintiffs' favor against Defendants for a total of $61,722.72 in damages, in addition to prejudgment interest at the rates noted above:

| | Overtime Wages | Unpaid Wages | Liquidated Damages | TOTAL |
|---|---|---|---|---|
| Daniel de Melo Ferreira | $3,844.54 | $6,500.00 | $10,344.54 | **$20,689.08** |
| Felix Florentino | $669.64 | $8,000.00 | $8,669.64 | **$17,339.28** |
| Marvin Yovany Oswaldo | $2,498.95 | $2,534.30 | $5,033.25 | **$10,066.50** |
| Alexis Aranda Paz | $1,938.93 | $1,105.00 | $3,043.93 | **$6,087.86** |
| Jeronimo Orellana Olivares | $1,430.00 | $2,340.00 | $3,770.00 | **$7,540.00** |
| **TOTAL** | **$10,382.06** | **$20,479.30** | **$30,861.36** | **$61,722.72** |

## VII.   Objections

This report and recommendation will be filed electronically and will be mailed to Defendants at Brooklyn's Constructions & Desings Inc., 6910 15th Ave., Brooklyn, NY 11228; Brooklyn's Constructions & Renovations Corp., 315 Kings Highway Apt. 2F, Brooklyn, NY

11223; 4 Giron Construction Inc., 1747 West 6th Street, Apt. 2L, Brooklyn, NY 11223; Francisco Giron, 1747 West 6th Street, Apt. 2L, Brooklyn, NY 11223.  Any written objections to this report and recommendation must be filed with the Clerk of the Court within fourteen (14) days of service of this report.  See 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 72(b). Any request for an extension of time for filing objections must be directed to the District Judge prior to the expiration of the fourteen-day period for filing objections.  Failure to file objections within fourteen days will preclude further review of this report and recommendation either by the District Court or the Court of Appeals.  See Miller v. Brightstar Asia, Ltd., 43 F.4th 112, 120 (2d Cir. 2022) (stating that, "although Rule 72 applies only to the district court's review of a report and recommendation, this court has adopted the rule that when a party fails to object timely to a magistrate's recommended decision, it waives any right to further review of that decision") (internal citation & quotations omitted).

Dated:  Brooklyn, New York
         March 15, 2024

_Vera M. Scanlon_
_____
VERA M. SCANLON
United States Magistrate Judge